IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

NOURISON RUG CORP.

:

    v.                :       Civil Action No. DKC 2006-2697

:

PARINCO OF VIRGINIA, INC.,
 ET AL.              :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this commercial contract case is a motion for summary judgment by Plaintiff Nourison Rug Corporation (paper 14). Also pending are motions by Defendant Abdi Parvizian for leave to amend his answer to add an additional affirmative defense (paper 22) and for summary judgment based on the proposed defense (paper 34). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Abdi Parvizian's motions for leave to amend and for summary judgment will be denied. Plaintiff's motion for summary judgment will be granted.[1]

**I. Background**

The following statement of facts is based on the complaint, the answers, and the exhibits submitted by the parties. The facts

---

[1] The parties also filed a Consent Motion to Revise Scheduling Order (paper 24) providing additional discovery, followed by requests for admission, and further dispositive motions, if Plaintiff's motion for summary judgment should not be granted in full. That motion is moot.

are undisputed except as noted.  This dispute arises from a business relationship involving the consignment sale of rugs and carpets.  Defendant Parinco of Virginia, Inc. ("Parinco") operates a business selling rugs and carpets.  On approximately August 3, 2004, Plaintiff and Parinco entered into a written agreement (the "Consignment Agreement") under which Plaintiff agreed to provide rugs to Parinco for sale on a consignment basis.  The Consignment Agreement contemplates that Plaintiff would deliver shipments of rugs to Parinco for sale, along with a memorandum listing the contents of each shipment and invoicing Parinco for a wholesale purchase price set by Plaintiff for each rug.  Parinco was authorized to sell the rugs at any price at its discretion or to reject and return any or all of the rugs to Plaintiff.  Upon the sale of each rug, Parinco agreed that title to the sale proceeds would pass to Plaintiff and that the proceeds would be held in a separate account until Parinco remitted to Plaintiff the purchase price set in Plaintiff's invoice.  Parinco was required to make weekly reports to Plaintiff of the rugs received and sold.

Over approximately the next year, Plaintiff provided numerous shipments of rugs to Plaintiff, and documented the agreed-upon price of each rug provided in its internal books under the account number 88004.  Parinco sold these rugs, and it agrees that it was indebted to Plaintiff in some amount in August 2005.  Parinco asserts, however, that some of the rugs were "unmerchantable" and

that some were not genuine. It contends that it received correspondingly lower sale prices for these unmerchantable and nongenuine rugs. Plaintiff calculated based on its records at that time that Parinco was indebted to it under account 88004 in the amount of $2,386,735.98. In satisfaction of this debt, on August 24, 2005, Parinco executed a note (the "Promissory Note") in the same amount as the debt claimed by Plaintiff under account 88004, $2,386,735.98. On October 14, 2005, Defendant Abdi Parvizian executed a written guarantee (the "Guarantee Agreement") with Plaintiff.[2] The Guarantee Agreement was signed by both parties, and provides some details about the context under which the Promissory Note and the Guarantee Agreement were executed. It explains that Abdi Parvizian made the guarantee "[p]er our discussion today, in order to induce Nourison to subordinate it's [sic] UCC lien against Parinco of Virginia, Inc. from its consignment dated 2004[.]" (Paper 1, Ex. C). Under the terms of the Guarantee Agreement, Plaintiff agreed to "subordinate it's UCC lien" against Parinco under the Consignment Agreement in favor of a line of credit or loan Parinco was pursuing with one or more third party lenders, and agreed that Abdi Parvizian's guarantee of

---

[2] It is not clear what relationship Abdi Parvizian has with Parinco. Parinco's President is Allen Parvizian, but it is also unclear from the record whether there is any relationship between Allen Parvizian and Abdi Parvizian.

the Promissory Note would be void if no loan or line of credit superior to Plaintiff's lien was obtained by Parinco. (*Id.*).

The Promissory Note signed by Allen Parvizian, Parinco's President, on Parinco's behalf includes a promise to pay Plaintiff "the sum of $2,386,735.98 together with interest computed at the rate of 8% per anum." (Paper 1, Ex. B). The Promissory Note provides that this debt will be fully paid by October 16, 2007. It also provides that in the event of a default not cured within 10 days, the holder of Promissory Note has the right to demand immediate payment of the entire outstanding balance. The typewritten text of the Promissory Note sets out a schedule of "bi-weekly" payments in the amount of $49,886.75 due on the first and fifteenth days of each month between November 2005 and October 2007. A handwritten alteration changed the term "bi-weekly" to "monthly" in this provision, but did not alter the language setting due dates on the first and fifteenth day of each month, or the language promising that the entire debt would be paid by October 16, 2007.

After the Promissory Note was executed, Plaintiff delivered one further shipment of rugs to Parinco, which Plaintiff contends was delivered on August 25, 2005. Plaintiff recorded this shipment under a separate account, number 88001, from its previous rug shipments that were paid for through the Promissory Note. Plaintiff's stated purchase price for these rugs was $208,883.67.

Parinco never paid Plaintiff for these rugs, although it sold all of the rugs without returning any to Plaintiff.

Plaintiff filed the complaint in this action on October 13, 2006, asserting claims against Parinco for breach of the Promissory Note and the Consignment Agreement, unjust enrichment, and conversion and against Parvizian for breach of the Guarantee Agreement.[3]  Defendants filed an answer on December 1, 2006.  On December 4, 2006, the court issued a scheduling Order, setting a deadline for amendments to the pleadings of January 18, 2007. (Paper 12, at 1).  The scheduling Order also set a deadline for the close of discovery of April 18, 2007, and for dispositive pre-trial motions of May 18, 2007.  (*Id*. at 2).  On February 13, 2007, Plaintiff filed its motion for summary judgment.  Abdi Parvizian first raised the defense of release in Defendants' joint opposition to Plaintiff's motion for summary judgment (paper 15), which was filed on March 2, 2007.  Abdi Parvizian's motion for leave to amend his answer was filed on March 16, 2007, (paper 22) and his motion for summary judgment based on the defense of release was filed on May 18, 2007 (paper 34).

## II.  Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material

---

[3] The heading of Plaintiff's conversion claim indicates that the claim is asserted against "Parvizian," but the substance of the allegations in the conversion claim relate only to Parinco.

fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her

responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The inquiry involved on a summary judgment motion "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 U.S. at 252. Where the movant also bears the burden of proof on the claims at trial, as Plaintiff here, it "must do more than put the issue into genuine doubt; indeed, [it] must remove genuine doubt from the issue altogether." *Hoover Color Corp. v. Bayer Corp.*, 199 F.3d 160, 164 (4th Cir. 1999) (internal quotation marks omitted), *cert. denied*, 530 U.S. 1204 (2000); *see also Proctor v. Prince George's Hosp. Ctr.*, 32 F.Supp.2d 820, 822 (D.Md. 1998) (evidentiary showing by movant "must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party") (internal quotation marks and italics omitted). Summary

judgment will not be appropriate unless the movant's evidence supporting the motion "demonstrate[s] an absence of a genuine dispute as to every fact material to each element of the movant's claim and the non-movant's response fails to raise a genuine issue of material fact as to any one element." *McIntyre v. Robinson*, 126 F.Supp.2d 394, 400 (D.Md. 2000) (internal citations omitted).

When faced with cross-motions for summary judgment, as in this case, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). *See also havePower, LLC v. Gen. Electric Co.*, 256 F.Supp.2d 402, 406 (D.Md. 2003) (citing 10A Charles A. Wright and Arthur R. Miller, *Federal Practice & Procedure* § 2720 (3d ed. 1983)). The court reviews each motion under the familiar standard for summary judgment, *supra*. The court must deny both motions if it finds there is a genuine issue of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A *Federal Practice & Procedure* § 2720.

## III.  Claims against Parinco

## A.  Parinco's Liability under the Promissory Note

Plaintiff requests summary judgment in its favor as to its claim that Parinco defaulted under the Promissory Note by failing

to make required payments, and seeks an award of $2,080,872 on this claim, the amount of principal and interest it asserts was outstanding when the complaint was filed.  As an initial matter, the parties dispute whether New Jersey or Virginia law applies to this claim.  In a diversity case, this court must apply the choice of law rules of Maryland, the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Maryland generally follows the doctrine of *lex loci contractus*:  "[a]bsent a choice-of-law provision in the contract, Maryland applies the law of the jurisdiction where the contract was made to matters regarding the validity and interpretation of contract provisions."  *Riesett v. W.B. Doner & Co.*, 293 F.3d 164, 173 n.5 (4th Cir. 2002) (citing *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560 (1995)).

Defendants argue that the Promissory Note became legally binding in Virginia, when Allen Parvizian signed it on behalf of Parinco.  This analysis, however, is incomplete.  The Promissory Note became legally binding when it was accepted by Plaintiff as payment of Parinco's debt under the consignment agreement, at Plaintiff's place of business in New Jersey.  The Consignment Agreement is governed by New Jersey law pursuant to its choice of law provision.  Moreover, it has long been held that the appropriate *lex loci* for a contract for payment, such as a promissory note, is the state where it is delivered, rather than the state where it is made by its drawer.  *See Ludlow v. Bingham*,

4 U.S. (4 Dall.) 47, 49-50 (1799).  Under these circumstances, it
is appropriate to apply New Jersey law to Plaintiff's claim for
violation of the Promissory Note.

**1.  Plaintiff's Showing of the Elements of a Breach of Contract**

Under New Jersey law, "to prevail on [a] breach of contract
claim, [a plaintiff] must prove the following elements: (1) a valid
contract existed between plaintiff and defendant; (2) [defendant]
breached the contract; (3) [plaintiff] performed its obligations
under the contract; and (4) [plaintiff] was damaged as a result of
the breach."  *Video Pipeline, Inc. v. Buena Vista Home Entm't,
Inc.*, 275 F.Supp.2d 543, 566 (D.N.J. 2003) (footnote omitted)
(citing *Nat'l Util. Serv., Inc. v. Chesapeake Corp.*, 45 F.Supp.2d
438, 448 (D.N.J. 1999); *Coyle v. Englander's*, 488 A.2d 1083
(N.J.Super.Ct.App.Div. 1985)).

Plaintiff is entitled to summary judgment that the Promissory
Note was a binding contract between it and Parinco, satisfying the
first element of a breach of contract action under New Jersey law.
In their answer, Defendants admitted that "on or about August 24,
2005, Parinco made and delivered to Plaintiff a Promissory Note .
. . .  The Note speaks for itself . . . ."  (Paper 9, at 2 ¶ 9).
Plaintiff has submitted the Promissory Note, and it appears on
Parinco letterhead and purports to have been signed by Allen
Parvizian in his capacity as President of Parinco.  (Paper 1, Ex.
B).  The first sentence of the Promissory Note contains an

unconditional promise by Parinco to pay the amount of $2,386,735.98, plus interest, according to the terms set forth in the Promissory Note.  (*Id.*).  Although the Promissory Note was executed only by Parinco, and does not recite the consideration supporting this promise, beyond asserting that it is made "for value received" (*id.*), Parinco admitted in its answer that it had become indebted to Plaintiff under the consignment agreement in at least some amount.  (Paper 9, at 2 ¶ 8).  Under the terms of the Guarantee Agreement, Plaintiff acknowledged that it accepted the Promissory Note, subject to Abdi Parvizian's personal guarantee, as payment for its prior deliveries of rugs under the Consignment Agreement. (Paper 1, Ex. C).  By accepting the Promissory Note as full payment of that debt, Plaintiff undertook a legal detriment sufficient to support the enforcement of Parinco's promise, because Plaintiff gave up its immediate right to take action to collect the debt.

Plaintiff has also established the second element, a breach of the promise.  Defendants admitted in their answer that "Parinco is in default of its obligations under the Note," (paper 9, at 3 ¶ 11), and it is clear from the record that Plaintiff is presently entitled, under the terms of the Promissory Note, to immediate payment of the entire outstanding balance under that agreement. Under New Jersey law, in interpreting the meaning of a contract,

> a court must first look for the intentions of
> the parties through an examination of what is

> contained between the four corners of their
> contract.  If the contract is unambiguous,
> then its construction presents a matter of law
> for the court.  But, when the parties' writing
> is inartful or flawed and suggests more than
> one plausible interpretation, the court must
> resist the temptation to interpret the writing
> and must, instead, provide the parties with an
> opportunity to offer parol evidence that would
> shed light on their true intentions.

*Raceway Petroleum, Inc. v. Gambacorto*, No. MON-L-5055-00, 2006 WL 560953, at *2 (N.J.Super.Ct.App.Div. March 9, 2006) (citing *Kaufman v. Provident Life & Cas. Ins. Co.*, 828 F.Supp. 275, 282 (D.N.J. 1992), *aff'd*, 993 F.2d 877 (3[d] Cir.1993); *Schor v. FMS Fin. Corp.*, 814 A.2d 1108, 1112 (N.J.Super.Ct.App.Div. 2002)).

The terms of the Promissory Note regarding the payments due are clear, and Defendants have not asserted any alternative interpretation.  Regardless of whether payments were termed monthly or biweekly, between August 1, 2005, and October 18, 2005, Parinco was required to make three payments in the amount of $14,666.67, and beginning on November 1, 2005, Parinco was required to make payments of $49,886.75 on the first and fifteenth day of each month.  Allen Parvizian admits in his declaration that Parinco missed payments for two months around March 2006 and made reduced payments of $25,000 beginning in May 2006.  (Paper 34, Ex. 1, at 5).  The language of the Promissory Note also clearly provides that in the event of any default thereunder that is not cured within ten days after the due date for the payment, "at the option of the note holder, the balance remaining hereunder shall be accelerated, and

shall be due and payable on demand without regard to the due dates set forth herein." (Paper 1, Ex. B).   Both Allen Parvizian and Michael Olsen, Plaintiff's Vice President of Finance, state that Parinco fell behind on payments in the spring and summer of 2006, and failed to catch up to the payment schedule set forth under the Promissory Note. (Paper 14, Ex. 1, Olsen Aff., at 3; paper 15, Ex. 1, Allen Parvizian Decl., at 5-6).   Accordingly, as of September 2006, Parinco had been in default of the Promissory Note for more than ten days.

Plaintiff exercised its right, under the Promissory Note, to accelerate the remaining balance of the Promissory Note because of this default.   Plaintiff's counsel sent a letter to Parinco on September 7, 2006, explaining that Plaintiff believed Parinco was in default under the Promissory Note and "invok[ing] its right (as set forth in the Note) to accelerate the full balance of principal and interest due under the Note — $2,080,872 — and . . . demand[ing] the full and prompt payment of such amount." (Paper 1, Ex D, at 1).   Plaintiff mailed this letter by certified mail, and has included a postal return receipt indicating that the letter was received on September 11, 2006. (Paper 14, Ex. 4, at 3).   Mr. Olsen has indicated, and Defendants have not provided any evidence to challenge, that Parinco has made no payments under the Promissory Note since the time of the demand letter. (Paper 14, Ex. 4, at 3).   Accordingly, the record evidence unequivocally

13

shows that Parinco is in default under the Promissory Note, and that the Promissory Note's terms entitle Plaintiff to the immediate payment of the entire outstanding balance.  Parinco's failure to make required payments has necessarily caused Plaintiff damages in the same amount, satisfying the third element of a breach of contract claim under New Jersey law.

Under New Jersey law, Plaintiff must also prove that it performed as required under the Promissory Note. *Video Pipeline, Inc.*, 275 F.Supp.2d at 566.  Because the Promissory Note was an unconditional promise, Plaintiff's acceptance of the Note in fulfillment of Parinco's debt under the consignment agreement satisfies this final element of a breach of contract claim.  Thus, Plaintiff has established each of the elements of a breach of contract claim under New Jersey law.

## 2. Affirmative Defense of Setoff

In opposing Plaintiff's motion for summary judgment, Defendants do not dispute any of the facts described above, nor do they argue that Plaintiff has failed to prove each of the elements of its claim for breach of contract.  Instead, Defendants assert that Plaintiff's claims under the Promissory Note are barred by the affirmative defense of setoff.  Black's Law Dictionary (8th ed. 2004) defines setoff as "[a] defendant's counterdemand against the plaintiff, arising out of a transaction independent of the plaintiff's claim."  Defendants' answer only conclusorily pleads

the defense of setoff: "[a]s their second affirmative defense, Defendants state that the claims alleged in the Complaint are barred by setoff." (Paper 9, at 5). No facts support this bare legal conclusion.

Pursuant to Fed.R.Civ.P. 12(f), "upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense . . . ." This language authorizes "the district court to act on its own initiative and to strike an insufficient defense without affording a formal hearing on the question." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1381, at 407 & n.2 (3[d] Ed. 2004) (citing *United States v. 416.81 Acres of Land*, 514 F.2d 627 (7th Cir. 1975)). A defendant is under an obligation to plead facts supporting an affirmative defense in its answer to the same extent that a plaintiff must plead facts supporting a cause of action in the complaint. *See Nat'l Acceptance Co. of Am. v. Regal Prods., Inc.*, 155 F.R.D. 631, 637 (E.D.Wis. 1994) (citing *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *416.81 Acres of Land*, 514 F.2d at 631; *Bobbitt v. Victorian House, Inc.*, 532 F.Supp. 734, 737 (N.D.Ill. 1982)). Because Defendants failed to plead any facts that form the basis of the setoff defense, this defense is facially defective, and the defense could be stricken by the court *sua sponte* without the need for further notice to

15

Plaintiff.[4]    Plaintiff, however, has not sought to strike the defense, and instead contends that there are no facts which support it.

The court agrees that Defendant's defense, that Plaintiff breached a duty to supply rugs of a specific quality, fails as a matter of law.  The Consignment Agreement, which both parties agree is governed by New Jersey law by its explicit terms, imposes no express warranty or other terms regarding the quality of the rugs that Plaintiff was to provide to Parinco.    The Consignment Agreement provides, in this regard, only that "Consignor [Plaintiff] shall deliver rugs and carpets (collectively, the "Consigned Merchandise"), to Consignee [Parinco] on consignment . . . ."  (Paper 1, Ex. A, at 1).

Although Parinco does not explicitly discuss the implied warranty of merchantability, provided by N.J. Stat. Ann. § 2A:2-314 (U.C.C. § 2-314), this is the only possible source of an obligation to supply merchantable rugs because there are no express contract terms that address the quality of the rugs.   It is not clear whether the U.C.C.'s implied warranty attaches in favor of a seller under a consignment agreement, and neither party has addressed this

---

[4] Indeed the pleading of facts to support the defense of setoff is particularly important to put a plaintiff on notice to the nature of the defense asserted, because setoff depends on allegations that the plaintiff owes the defendant a debt under a different contract, and thus incorporates into the pleadings an affirmative claim based on a separate transaction from the claim against which the defense is asserted.

issue.  It is clear, however, that pursuant to N.J. Stat. Ann. § 2A:2-316(3)(b) any implied warranty is waived if the buyer of the goods has had a full opportunity to inspect the goods and has nonetheless accepted the goods.

> If the buyer before entering into the contract
> has examined the goods or the sample or model
> as fully as desired or has refused to examine
> the goods after a demand by the seller there
> is no implied warranty with regard to defects
> that an examination in the circumstances
> should have revealed to the buyer . . . .

N.J. Stat. Ann. § 2A:2-316(3)(b) (UCC § 2-316(3)(b)).  In this case, the Consignment Agreement explicitly provided that Parinco could return any unsold rugs to Plaintiff at any time without obligation to pay for the returned rugs.  (Paper 1, Ex. A, at 3 ¶ 8).  Although this right of inspection occurred after Parinco had signed the Consignment Agreement, it occurred before Parinco became obligated to purchase any of the specific rugs, by the terms of the Consignment Agreement.  Because Parinco had a full opportunity to examine the rugs while they were in its possession and did not return the rugs, Defendants cannot assert an implied warranty of merchantability claim against Plaintiff.

Because Plaintiff has come forward with uncontradicted evidence as to each element of a breach of contract claim, and because Defendant's defense of setoff fails as a matter of law, Plaintiff is entitled to summary judgment in the full amount of the outstanding principal and interest under the Promissory Note.  Mr.

17

Olsen stated in his affidavit that this amount was $2,080,872 as of September 1, 2006.  This is the same amount that Plaintiff demanded in its default letters to Parinco and Abdi Parvizian (Paper 1, Exs. D & E), and the same amount Plaintiff claimed in counts one and five of its complaint.  The  $2,080,872 figure is less than the initial $2,386,735.98 balance of the Promissory Note, reflecting some payments that were made by Parinco under the Promissory Note, as evidenced by Allen Parvizian's declaration.  Defendants have not challenged Plaintiff's assertion that this was the amount due under the Promissory Note as of September 1, 2006.  Accordingly, summary judgment will be entered against Parinco under count one of the complaint in the amount of $2,080,872.

**D.  Parinco's Liability under the Consignment Agreement**

Plaintiff also argues that it is entitled to summary judgment against Parinco under the Consignment Agreement.  There is no dispute as to the first element of Plaintiff's claim, the existence of a valid contract between Plaintiff and Parinco.  Defendants admitted in their answer that "on or about August 3, 2004, Plaintiff and Parinco entered into a Consignment Agreement . . . . The Agreement speaks for itself . . . ."  (Paper 9, at 2 ¶ 6).

There is also no question, based on the record, as to the second element, that Parinco breached the contract.  Mr. Olsen stated in his supplemental affidavit that after the Promissory Note was executed, Plaintiff sent only one additional shipment of rugs

18

to Parinco, and that this shipment of rugs was billed to Plaintiff under a separate account, number 88001. (Paper 23, Ex. 1, Olsen Supplemental Aff., at 2). Mr. Olsen also attached to his affidavit a record from Plaintiff's files indicating that only one shipment was made to Parinco under account 88001, which was sent out August 25, 2005 and was invoiced at the total price of $208,883.67. (*Id.*, Attachment 9). Mr. Olsen stated in his initial declaration that Parinco sold all of the rugs that had been invoiced under account 88001, but has never paid any part of the $208,883.67 balance due under that account. (Paper 15, Ex. 1, Olsen Aff., at 2, 4). While Defendants denied Plaintiff's allegations as to these facts in their answer, they have provided no evidence that tends to contradict Plaintiff's evidence that the rugs were delivered and sold, and that the purchase price invoiced by Plaintiff was never paid.

Defendant's arguments and evidence in favor of its defense of setoff are not sufficient to challenge Plaintiff's proof that Plaintiff performed its obligations under the contract. This argument fails because any claim by Parinco alleging the delivery of defective rugs must be based on the implied warranty of merchantability. As discussed above, implied warranties are waived, pursuant to N.J. Stat. Ann. § 2A:2-316(3)(b), when as here, the buyer has had a full opportunity to inspect the goods and nonetheless accepts them.

19

Plaintiff has also established the fourth and final element of a breach of contract action under New Jersey law, because there can be no question that Parinco's refusal to pay for the rugs delivered under account 88001 caused Plaintiff an injury.  Mr. Olsen's statement indicates that Parinco accepted and sold rugs invoiced at the total price of $208,883.67 and has made no payment with respect to this debt.  As discussed above, with respect to Plaintiff's claim under the Promissory Note, Parinco's affirmative defense fails.  Accordingly, summary judgment will be entered in Plaintiff's favor as to count two of the complaint in the amount of $208,883.67.  Because Plaintiff's motion for summary judgment against Parinco for breach of the Promissory Note and the Consignment Agreement will be granted, it is not necessary to consider Plaintiff's alternative claims for unjust enrichment and conversion and those counts will be dismissed without prejudice.

## V.  Plaintiff's Claim Against Abdi Parvizian

## A.  Motion for Leave to Amend Answer

Abdi Parvizian seeks leave to file an amended answer to assert the affirmative defense of release.  He first raised the defense of release on March 2, 2007 and only moved to amend his answer on March 16, 2007, both more than a month after the January 18, 2007, deadline for amendments to the pleadings.  An attempt to amend the pleadings in a case after a scheduling order deadline for such amendments requires a court to consider the conflicting language of

Fed.R.Civ.P. 15(a) and 16(b).   Pursuant to Fed.R.Civ.P. 15(a), leave of court is generally required for an amendment to a pleading including an answer, but "leave shall be freely given when justice so requires."  Fed.R.Civ.P. 16(b), however, provides that a scheduling order "shall not be modified except upon a showing of good cause."

This court previously observed that

> [a]lthough neither the [United States Court of Appeals for the] Fourth Circuit nor the [United States] Supreme Court has addressed directly the dynamic between these two rules at this procedural juncture, a majority of circuits "have held that Rule 16(b)'s 'good cause' standard, rather than Rule 15(a)'s 'freely given' standard, governs motions to amend filed after scheduling order deadlines." To that end, [the party seeking leave to amend] first must satisfy the good cause standard of Rule 16(b) and, if successful, then must pass the tests for amendment under Rule 15(a).

*CompuSpa, Inc. v. Int'l Bus. Machines, Corp.*, No. Civ.A. DKC 2002-0507, 2004 WL 1459272, at *2 (June 29, 2004) (quoting *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154-55 (1st Cir. 2004)); *accord Odyssey Travel Center, Inc. v. RO Cruises, Inc.*, 262 F.Supp.2d 618, 631 (D.Md. 2003) (citing *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 373 (D.Md. 2002)).  Since this court's opinion in *CompuSpa, Inc.* was issued, an unpublished disposition by the Fourth Circuit has reached the same conclusion, that a party moving to amend a pleading after a scheduling order deadline must first satisfy the good cause standard of Fed.R.Civ.P. 16(b).  *Montgomery*

*v. Anne Arundel County, Md.*, 182 F.App'x 156, 162 (4th Cir. 2006) (Unpublished Disposition) (affirming denial of leave to amend complaint because plaintiff could have submitted motion to amend before scheduling Order deadline but did not do so).  While the above cited cases each involved a motion by a plaintiff to amend the complaint, the same standard of "good cause" applies to a motion by a defendant to amend an answer.  *Interstate Narrow Fabrics, Inc. v. Century USA, Inc.*, 218 F.R.D. 455, 460 (M.D.N.C. 2003) (denying motion to amend answer to add valid statute of limitations defense that had been "overlooked" prior to the deadline to amend pleadings under scheduling Order).

The "good cause" standard of Fed.R.Civ.P. 16(b)

> focuses on the timeliness of the amendment and the reasons for its tardy submission. Because a court's scheduling order "'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril,'" *Potomac Electric Power Co. v. Electric Motor Supply, Inc.*, 190 F.R.D. 372, 375-376 (D.Md.1999) [()quoting *Gestetner [Corp.] v. Case Equipment Co.*, 108 F.R.D. 138, 141 (D.Me.1985)()], a movant must demonstrate that the reasons for the tardiness of his motion justify a departure from the rules set by the court in its scheduling order.
>
> The primary consideration of the Rule 16(b) "good cause" standard is the diligence of the movant.  Lack of diligence and carelessness are "hallmarks of failure to meet the good cause standard." *West Virginia Housing Dev. Fund v. Ocwen Technology Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D.W.Va.2001). "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification.  If that party was not diligent, the inquiry

should end."  *Marcum [v. Zimmer]*, 163 F.R.D.
[250 ,] 254 [(S.D.W.Va. 1995)].

*Rassoull*, 209 F.R.D. at 374 (emphasis in original).

Abdi Parvizian provides no reason for his failure either to include the defense of release in his original answer or to make a timely motion for leave to amend the answer to include this defense.  There is no indication that any of the facts upon which Abdi Parvizian seeks to base his defense of release came into his possession after his original answer was filed, and there is certainly no indication that he learned of these facts after the scheduling order deadline for amendments to the pleadings on January 18, 2006.  These circumstances alone are a sufficient basis to conclude that Abdi Parvizian was not diligent in pursuing this defense, and he has offered no basis to support a finding of good cause.  He argues that he has diligently sought leave to amend his complaint since he realized the defense existed, when he filed his opposition to Plaintiff's motion for summary judgment on March 2, 2007.  Even if this were true, however, it would not constitute good cause because it would not excuse the failure to assert the defense prior to the scheduling Order's deadline for amendments to the pleadings.

Abdi Parvizian argues that Plaintiff would not suffer any prejudice from the tardy amendment to his answer.  Thus, he argues, in the spirit of deciding claims on the merits, he should be allowed either to amend his answer or to assert the defense of

23

release without having raised the defense in his answer.  In making this argument, he relies heavily on two cases holding that affirmative defenses were not waived, although they were not asserted in a responsive pleading, in the absence of prejudice to the opposing party, *Cornell v. Council of Unit Owners Hawaiian Village Condominiums, Inc.*, 983 F.Supp. 640, 642-43 (D.Md. 1997), and *DelCostello v. Int'l Brotherhood of Teamsters*, 588 F.Supp. 902, 905-06 (1984), *aff'd*, 762 F.2d 1219 (4th Cir. 1985).  Both cases held that waiver of an affirmative defense would not occur in the absence of prejudice to the opposing party.  *Cornell*, 983 F.Supp. at 642; *DelCostello*, 588 F.Supp. at 906.  Neither case, however, arose in the context of an attempt to assert a defense after a scheduling order deadline for amendments to the pleadings.  Indeed, both cases rely on the availability of liberal amendment in the interest of justice pursuant to Fed.R.Civ.P. 15(a), as one rationale for allowing an affirmative defense to be asserted after the answer is filed.  *Cornell*, 983 F.Supp. at 642; *DelCostello*, 588 F.Supp. at 906.

This rationale is not available when, as here, a scheduling Order deadline for amendment of the pleadings has passed.  Under these circumstances, permitting a defendant to raise a new affirmative defense on a motion for summary judgment without making a showing of good cause would contravene the purposes for setting a deadline for amendment of the pleadings and for requiring good

24

cause to amend a scheduling order. The advisory committee commented on the purpose of creating a deadline for the amendment of pleadings: this deadline "assures that at some point both the parties and the pleadings will be fixed, by setting a time within which joinder of parties shall be completed and the pleadings amended." Fed.R.Civ.P. 16(b)(1), advisory committee's note for 1983 amendment. This court has previously noted that the justification for imposing a strict good cause requirement to alter a scheduling order is to ensure that the court's orders, particularly with regard to schedules that allow the timely resolution of cases and the orderly progression of the court's docket, are not cavalierly disregarded. *Rassoull*, 209 F.R.D. at 374 ("Because a court's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril, a movant must demonstrate that the reasons for the tardiness of his motion justify a departure from the rules set by the court in its scheduling order." (citations and internal quotations omitted)). Because Abdi Parvizian did not raise the defense of release in his answer or make a timely motion to amend his answer to include this defense, and because he has failed to assert any good cause for these failures, his motion for leave to amend will be denied, and any defense of release is waived.

In addition, Plaintiff has made a conditional motion to extend the time for discovery to investigate this defense (paper 24), to

which Defendants have consented.  The delay in the resolution of
this case that would therefore be caused by allowing Abdi Parvizian
to raise the defense of release at this juncture is not warranted.
It appears likely that Abdi Parvizian's proposed defense of release
is futile, and in light of this likely futility, it would be
inappropriate to impose upon Plaintiff any delay in the prompt
resolution of this case.

The Fourth Circuit has cautioned that "[l]eave to amend . . .
should only be denied on the ground of futility when the proposed
amendment is clearly insufficient or frivolous on its face."
*Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)
(quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th
Cir.), *cert. dismissed*, 448 U.S. 911 (1980)).  Although neither
party specifically discusses what state's law is applicable to the
Guarantee Agreement, both parties apply Maryland law with respect
to this issue.[5]

---

[5] Plaintiff argued in its initial brief that New Jersey law
applied to the Consignment Agreement, and stated, without offering
a rationale, that it should also apply to the Promissory Note and
the Guarantee Agreement.  Defendants responded by arguing that
Maryland law applies to the Guarantee Agreement.  While there is
some ongoing dispute as to the law applicable to the other
agreements, Plaintiff's subsequent briefing has applied Maryland
law with respect to the Guarantee Agreement.  (Paper 23, at 10;
paper 35 at 7).  Because both parties have come to apply Maryland
law to the Guarantee Agreement, and neither party has presented a
rationale for applying another state's law, the release defense
will be analyzed under the law of Maryland, the forum state.

Maryland continues to follow

> the Restatement (First) [of Securities]
> position . . . [to] hold that "when a creditor
> and the principal alter the terms of an
> obligation without the consent of the surety,
> the surety is discharged" unless the surety is
> a "compensated surety," a term of art meaning
> a business association "'organized to make
> such bonds or undertakings for profit.'"

*Cadle Co. v. Arborwood II Nominee Corp.*, 360 Md. 240, 242-43 (2000)

(quoting *A/C Elec. Co. v. Aetna Ins. Co.*, 251 Md. 410, 413-414,

416, 418 (1968)).  It is also well established in Maryland that

> the law permits a creditor to voluntarily
> forbear the prompt and vigorous enforcement of
> his demands against a principal debtor without
> losing his right to resort to the surety.  In
> order to exonerate a surety from his
> liability, it must be shown that the
> indulgence given by the creditor to the
> principal debtor was in pursuance of a
> definite agreement between them, resting upon
> a valid consideration, and of such a character
> that it would stop the creditor from enforcing
> the payment of the debt before the expiration
> of the extended time.

*Berman v. Elm Loan & Savings Assn.*, 114 Md. 191, 195 (1910)

(citations omitted); *see also Glens Falls Ins. Co. V. Balt. County*

*ex rel. Dryer*, 230 Md. 524, 532 (1963) ("It is clear that mere

forbearance to sue, or lack of diligence, will not suffice" to

release a guarantor (citing *Berman*, 114 Md. at 195)).

The proposed amended answer mentions the defense of release,

but does not allege any facts that would form the basis of such a

defense.  Accordingly, if the amended answer were filed, it would

be appropriate for the court to strike the defense of release, the

27

only change proposed in the amended answer, *sua sponte* pursuant to Fed.R.Civ.P. 12(f).   See 5C *Federal Practice & Procedure* § 1381. As discussed above, facts supporting an affirmative defense must be pled, *see Nat'l Acceptance Co. of Am.*, 155 F.R.D. at 637 (citing cases), and it is inappropriate for a pleading to rely on a bare legal conclusion.   Abdi Parvizian's proposed amended complaint seeks to rely on a conclusory legal allegation that "[a]s his third affirmative defense, Defendant Parvizian states that the claims alleged against him in the Complaint are barred by release." (Paper 22, Ex. 1, proposed amended answer).   The amended answer asserts no facts to support this bare legal conclusion, and would be stricken if it were filed.   As a result, amending the answer to include this bare legal conclusion would be futile, because it would not preserve the defense that Abdi Parvizian seeks to assert.

In addition, the evidence that Abdi Parvizian forecasts in response to Plaintiff's motion for summary judgment and in support of his own motion for summary judgment based on this defense does not support the defense, and would be insufficient to withstand Plaintiff's motion for summary judgment.   Abdi Parvizian points to the declaration of Allen Parvizian and an attached exhibit consisting of emails between Plaintiff's representatives and representatives of Parinco to support the defense.   Allen Parvizian's declaration makes a bare assertion that Plaintiff agreed to reduce the amount of Parinco's payments under the

Promissory Note, and alleges that these modifications are evidenced by emails attached to the declaration as an exhibit.   (Paper 15, Ex. 1, Allen Parvizian Decl., at 5-6 ¶¶ 25-28).

The emails included in the exhibit to Parvizian's declaration involve Plaintiff's employees asking Parinco for partial and late payments that Parinco agreed to make in partial fulfillment of its obligation under the Promissory Note, but do not express any agreement in exchange for separate consideration to delay or reduce Parinco's obligations under the Promissory Note.   In the emails, Plaintiff's employees also agree not to deposit postdated checks submitted by Parinco based on Parinco's indication that it would replace the checks with a wire transfer of funds.   The acceptance of partial and late payments is in the nature of a forbearance or indulgence, as was any agreement not to deposit post-dated checks that Parinco had submitted to Plaintiff.   Likewise, any acceptance by Plaintiff of payments in amounts less than called for under the Promissory Note in May and June 2006 (paper 15, Ex. 1, at 5 -6 ), does not constitute an agreement modifying the terms of the Promissory Note for separate consideration, but rather a temporary forbearance or indulgence of Parinco's default under the Promissory Note.   The only benefit that Plaintiff appears to have received, according to the emails, were partial and late payments in partial fulfillment of Parinco's preexisting debt under the Promissory Note, which could not constitute separate and valid consideration

for an agreement to change the terms of the Promissory Note.  Thus, it appears unlikely that Plaintiff has any actual facts to back up its conclusory assertion that Plaintiff entered a binding agreement to change the terms of the Promissory Note by extending the deadline for payment.

Because of lack of good cause and futility, and because there would be at least some prejudice to Plaintiff in the form of an extension of time for discovery related to the additional affirmative defense, Abdi Parvizian's motion for leave to file an amended complaint and his motion for summary judgment will be denied.  Because of the futility and the lack of diligence by Abdi Parvizian in raising this defense, there is no justification for imposing even the minor prejudice associated with a delay in these proceedings upon Plaintiff.  Accordingly, the motion for leave to amend the answer will be denied and Abdi Parvizian's contemplated defense of release will be deemed waived.  Because this defense has been waived, Abdi Parvizian's motion for summary judgment, (paper 34), which depended entirely on this defense, will be denied.

## B.  Breach of the Guarantee Agreement

Plaintiff moves for summary judgment that Abdi Parvizian is liable for breach of the Guarantee Agreement.  Under Maryland law, there is a distinction between a suretyship and a guarantee, but regardless of how the Guarantee Agreement is characterized, Abdi

Parvizian has breached it and Plaintiff is entitled to summary judgment.

> A contract of suretyship is a tripartite agreement among a principal obligor, his obligee, and a surety. This contract is a direct and original undertaking under which the surety is primarily or jointly liable with the principal obligor and therefore is responsible at once if the principal obligor fails to perform.
>
> . . .
>
> . . . [A] contract of guaranty has several distinguishing characteristics. First, this particular contract is collateral to and independent of the principal contract that is guaranteed and, as a result, the guarantor is not a party to the principal obligation. A guarantor is therefore secondarily liable to the creditor on his contract and his promise to answer for the debt, default, or miscarriage of another becomes absolute upon default of the principal debtor and the satisfaction of the conditions precedent to liability. Second, the original contract of the principal is not the guarantor's contract, and the guarantor is not bound to take notice of its nonperformance. Rather, the guarantor agrees that the principal is able to and will perform a contract that he has made or is about to make, and that if he defaults the guarantor will pay the resulting damages provided the guarantor is notified of the principal's default. As such, the guarantor insures the ability or solvency of the principal.

*Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 259-60 (1985) (citations omitted). As discussed above, Plaintiff has established the validity of the underlying Promissory Note that Parinco provided to Plaintiff, and that Parinco was in breach of the

Promissory Note at least as of September 2006.  Beyond Parinco's default under the Promissory Note, the only other condition precedent to liability under Abdi Parvizian's promise in the Guarantee Agreement is notice of Parinco's default under the Promissory Note.  By letter dated September 7, 2006, Plaintiff notified Abdi Parvizian that the principal obligor, Parinco, was in default under the Promissory Note, and that Plaintiff had accelerated the full balance due under the Promissory Note, and demanding this full amount, $2,080,872, from Abdi Parvizian by September 20, 2006.  (Paper 1, Ex. E).  Abdi Parvizian admitted in his answer that he had not paid any amount to Plaintiff under the Guarantee Agreement.  Abdi Parvizian argues that he is entitled to the same setoff defense that Parinco asserts, but this defense is barred because it fails as a matter of law.  For the reasons set forth above, Abdi Parvizian's attempt to assert the defense of release is insufficient and his motion to amend the answer will be denied.  Because Plaintiff has shown that Parinco was in default under the Promissory Note and that Abdi Parvizian was notified of the default but failed to make good on his promise to perform pursuant to the Guarantee Agreement, he is in breach of the Guarantee Agreement.  Accordingly, summary judgment will be entered in favor of Plaintiff on count five of the complaint in the full amount of the outstanding principal and interest under the Promissory Note at the time the complaint in this action was filed.

Accordingly, summary judgment will be entered against Abdi Parvizian in the same amount as Parinco's liability under count one of the complaint, $2,080,872.

## IV.  Conclusion

For the reasons set forth above, Plaintiff's motion for summary judgment will be granted.  Abdi Parvizian's motions for leave to amend and for summary judgment will be denied.  A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
